STROHN and another vs. THE DETROIT AND MILWAUKEE RAIL-
ROAD COMPANY.

RAILROAD COMPANY: *Agreement of freight agent to carry goods in specified time — What constitutes such agreement, and effect of it.— Exceptions to instructions.*

1. A railroad company will be bound by its freight agent's agreement to carry goods within a specified time, if it be a reasonable time.

2. The carrier does not in such a case become an *absolute* insurer of the goods, but their destruction within the prescribed time by the act of God or of the public enemy will excuse non-delivery.

3. A mere statement by the agent that the ordinary time for transportation over the proposed route is a certain number of days, does not constitute an agreement to carry in that time.

4. Where the general charge consisted of about forty folios, defendant excepted generally; and also excepted "to the rejection of the instructions asked by it; to all that part of the charge wherein the instructions given at its request were in any wise qualified or against it; to all that part wherein the court commented on the evidence; and to all the remarks to the jury not relating to points raised or to the merits of the case." *Held*, that the exceptions were too general to raise any question except as to the correctness of the instructions asked by defendant and refused.

APPEAL from the County Court of *Milwaukee* County.

Action for damages accruing to the plaintiffs from a failure of defendant to carry goods of the plaintiffs from Milwaukee to New York, and deliver them at the latter city within fifteen days, as it is alleged that defendant contracted to do; also for damages resulting from alleged improper handling, etc. The

decision of this court, on a former appeal in the same cause, will be found in 21. Wis. 554–62, to which reference is made.

. On the trial, testimony offered by defendant as to the absence of authority on the part of its agent in Milwaukee to make the time contract alleged in the complaint, was rejected; and the court subsequently instructed the jury that the agreement to carry within a specified time would be binding, if the time named was a reasonable one.

The questions discussed here arose upon the general charge of the court, and upon its refusal of certain instructions asked by the defendant; and the only one of these passed upon by this court will be found recited in the opinion, where also the form of the exceptions taken will appear. Verdict and judg-ment for the plaintiffs; and defendant appealed.

*Emmons & Van Dyke,* for appellant, contended, among other things, that the court erred in assuming an authority in the local agent to make the time contract alleged. Such a con-tract is one to carry and deliver *in all events.* Nothing will excuse. Such a contract is one of absolute insurance. It imposes obligations far beyond what the common law casts upon the carrier. For delays under the ordinary bill of lading, or oral contract to carry within a reasonable time, he is liable only for negligence. *Peet v. Ch. & N. W. Railway Co.,* 20 Wis. 594; *Hand v. Baynes,* 4 Whart. 204–213; *Harmony v. Brigham,* 1 Duer, 209–226; Angell on Carriers, § 294. In these cases of contract to carry within a prescribed time, the contracting party is not held liable as a common carrier, but as an ordinary bailee for hire under special agreement. Angell on Carriers, §§ 37, 59, note 1; *Robinson v. Dunmore,* 2 Bos. & Pul. 417. In *King v. Woodbridge,* 34 Vt. 565, the question of the power of the agent was not suggested. The contract was made with the general superintendent. Such contracts are out of the ordinary course of business; and courts will pre-

sume that the agents have no authority to enter into them. *Ætna Ins. Co. v. N. W. Iron Co.*, 21 Wis. 458.

*F. W. Cotzhausen, contra,* cited *King v. Woodbridge,* 34 Vt. 565; *McCotter v. Hooker,* 4 Seld. 497; *Harmony v. Bingham,* 2 Kern. 99; *Same Case,* 1 Duer, 209; *Spring v. Haskell,* 4 Allen, 112; *Adams' Exp. Co. v. Egbert,* 36 Pa. St. 360; *Medbury v. N. Y. & Erie R. R.,* 26 Barb. 564; *Kent v. Hudson River R. R.,* 22 id. 278; *Wilson v. Railway Co.,* 18 Eng. L. & E. 557; *Watson v. Ambergate, etc., R. W. Co.,* 3 id. 497; *Pickford v. Railway Co.,* 12 M. & W. 766; *Muschamp v. R. W. Co.,* 8 id. 421; *Place v. Union Exp. Co.,* 2 Hilt. 19; Redfield on Railways, §§ 137, 146, 169, and authorities there cited.

COLE, J. The first point made by the counsel for the appellant is, that the judgment of the county court should be reversed for certain matters contained in the general charge. It is said that the charge is intemperate in its language, partisan in its spirit, and well calculated to prejudice the defendant's cause in the minds of the jury. It appears to us that some of the remarks of the county judge, if not marked by a spirit of partiality amounting to prejudice, were certainly calculated to exert an improper influence upon the finding of the jury, and, were proper exceptions taken to them, would require a reversal of the judgment. But the exceptions are not sufficient to enable the appellant to avail himself of this objection to the charge. The general charge consists of about forty folios, and the exception is as follows: "The defendant thereupon excepted, first, generally to the charge; and second, to the rejection of those instructions asked for by the defendant, and to all that part of the charge wherein those points desired by the defendant that were given, were in any wise qualified or against him; and to all that part of the charge wherein the court has commented on the evidence, and to all the remarks to the jury, not relating to points raised, or to the merits of the case."

Now, it is very evident that this exception does not point out to the mind of the judge, nor call his attention to, the particular portion of the charge to which objection was taken. Had it been more specific, the judge might possibly have corrected his charge, or made some explanation which would have removed the unfavorable impression left by the remarks now complained of. The charge was lengthy, combining a variety of propositions and topics; and merely to say that one excepts to those parts of the charge " wherein the court has commented on the evidence, and to all the remarks to the jury not relating to the points raised on the merits of the case," really amounts to nothing more than a general exception. It is quite too loose and indefinite to raise any question upon any portion of the charge. *Gilman v. Thiess*, 18 Wis. 528 ; *Chamberlain v. Pratt*, 33 N. Y. 47 ; *Newell v. Doty*, id. 83.

We cannot, therefore, reverse the judgment for this objection to the charge. But the exception is sufficient to raise the question as to the rejection of certain instructions asked by the defendant. And we think the first instruction asked and refused should have been given. That instruction was as follows: " Before the jury can find a verdict for the plaintiffs in this case, they must find the fact that there was a contract, on the part of the company defendant, to carry the goods in question through to New York, within fifteen days from the date of their delivery to defendant at Milwaukee; mere statements that the ordinary time of carriage was from ten to fifteen days, if honestly made and without intent to deceive, will not be sufficient to overrule the written contract."

It was claimed by the plaintiffs, that the railroad company, by its agents, had entered into a contract to transport certain property belonging to them from Milwaukee to New York within fifteen days. The defense was, that the company had made no time contract, but that certain bills of lading, or receipts introduced on the trial, contained the true conditions

of the contract. The general freight agent of the company at Milwaukee stated, that one of the plaintiffs came to him to learn at what ·rates they would undertake the carriage of the goods by his line, saying that he (plaintiff) would have to give bonds for the liquors, and that it would require they should be got to New York within a month, and then asked if the witness would guaranty the transportation in that time; that he replied he would not guaranty any time, but the usual time in which freight went through was fifteen or twenty days. Of course it was material for the plaintiffs, in order to maintain the action, to show that there was a contract on the part of the defendant to carry the goods to New York within fifteen days from the date of their delivery in Milwaukee.

This was their case. And the instruction was, that the jury must find the fact that such a contract was entered into, and that mere statements that the ordinary time of carriage was from ten to fifteen days, if honestly made, were not sufficient to show such a time contract, nor to overcome and destroy the presumption which would otherwise arise upon the bill of lading. It appears to us that this was a proper instruction to give the jury, and that it was pertinent to the testimony. The bills of lading were before the jury. And the main question was, whether they constituted the real contract between the parties, or whether there was a different parol contract made before the bills of lading were given. And it is clear that mere statements by the agent that the ordinary time of carriage was from ten to fifteen days, would not be sufficient to show such parol contract, nor overcome the effect of the bills of lading or receipts as evidence of the real contract. It is said that the instruction was not technically correct, because the words "written contract" are used at the close. These words obviously refer to the bills of lading or receipts which had been offered in evidence. We do not think the instruction could have been misunderstood by the jury.

Strohn and another vs. The Detroit and Milwaukee R. R. Co.

Another question discussed upon the argument was, whether it was within the scope of the authority of the freight agent at Milwaukee to make the time contract alleged. The county court held in effect the law to be, that if the agreement to transport the goods as to time was within a reasonable time, then it was within the scope of the employment of the agent to make the contract, and that it would bind the company.

It is claimed that this view of the law is erroneous. For, it is said, admitting that the local agent might contract for the transportation of goods within a reasonable time, yet, when he contracts to deliver within a specified time, he imposes upon the company an obligation greatly beyond the liability which the common law imposes upon a carrier; that in the the latter case nothing will excuse, not even an impossibility of complying with the contract to deliver within the time, nor an act which would excuse a delivery when the contract was to deliver within a reasonable time. We do not understand, however, that when a railroad company by its agent agrees to deliver goods within a prescribed time, it becomes an absolute insurer of the goods, and must deliver at all events or pay for the property. We suppose if the goods were destroyed by an act of God or the public enemy before the time for delivering them expired, this would excuse the carrier on the special contract. The parties are presumed to contract with reference to the responsibility which the common law imposes upon the carrier in ordinary cases, the carrier assuming the risk in respect to the time. Such, it seems to us, is the extent of liability assumed by the special agreement. And with this understanding as to the meaning and obligation of the time contract alleged to have been made, we think the county court was correct in holding that it was within the scope of the employment and duty of the agent to make it, and bind the company.

We were requested to pass upon the question of the authority of the agent to make a time contract, and we have done so,

although not strictly necessary in the disposition of this appeal. We therefore deem it unnecessary to pursue the discussion further at the present time.

*By the Court.*—The judgment of the county court is reversed, and a new trial ordered.